Date signed August 17, 2005



MARK B. MCFEELEY
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### At Baltimore

| | | |
|---|---|---|
| In re:  SHIPPERS' CHOICE OF VIRGINIA, INC., | * * * | Case No. 04-17933-SD<br>Chapter 11 |
| Debtor. | * * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM</u>

The Court held a final hearing on the proposed disclosure statement of Shippers' Choice of Virginia, Inc. ("Debtor") on June 20, 2005 and took the matter under advisement. Commercial Driver Services, Inc. ("Commercial"), objected to the disclosure statement asserting, among other things, that the proposed plan of reorganization violates the absolute priority rule outlined in 11 U.S.C. § 1129(b)(2)(B)(ii), and that a disclosure statement cannot be approved where the proposed plan of reorganization upon which the disclosure statement is based is unconfirmable on its face.  Commercial also asserts that the disclosures contained in the disclosure statement are inadequate.  Because it is not clear at this stage in the proceedings whether the cramdown provisions of  11 U.S.C. § 1129(b) will apply, it is premature to reach the question of absolute priority.   Accordingly, while the Court agrees that it is useless to approve a

1

disclosure statement for a patently unconfirmable plan of reorganization, the Court cannot now find that the plan is unconfirmable on its face because the evidence now before the Court is inconclusive as to whether Class 4 will accept or reject the Debtor's proposed plan. However, after reviewing the disclosure statement for completeness, the Court finds that inadequacies in the proposed disclosure statement preclude its approval.

## BACKGROUND AND FACTS

Debtor is in the business of running a professional training school for commercial truck drivers. On March 31, 2004, Debtor filed a voluntary petition under Chapter 11 of the bankruptcy code. Since the filing of the petition, Debtor obtained two extensions of the exclusive periods within which to file its plan and disclosure statement and solicit acceptances of its plan in accordance with 11 U.S.C. § 1121.[1]   Debtor filed its proposed plan of reorganization on January 25, 2005.

Debtor's proposed plan and disclosure statement describe five classes of claims. Class 1 consists of allowed administrative claims as defined in 11 U.S.C. § 503(b). Class 2 consists of allowed priority claims arising under 11 U.S.C. § 507(a)(3), (a)(4) and (a)(6). Class 3 consists of allowed priority unsecured claims for taxes arising under 11 U.S.C. § 507(a)(8). Class 4 consists

---

[1]Section 1121(b) provides the debtor with a 120-day exclusive period following the date of the order of relief within which to file a plan. 11 U.S.C. § 1121(b). Section 1121(c) provides the debtor with a 180 day period within which to solicit acceptances of a proposed plan filed within the 120 day period. 11 U.S.C. § 1121(c). The exclusivity periods provided by § 1121(b) and (c)(3) may be extended upon request of a party in interest in accordance with 11 U.S.C. § 1121(d). The Debtor requested and obtained two extensions of the exclusivity periods contained in 11 U.S.C. § 1121(b) and (c)(3) in accordance with 11 U.S.C. § 1121(d). Debtor's third request for extension of exclusivity was denied. (*See* Docket Nos. 75 - Third Motion to Extend Exclusivity Under §1121(d), 76 - Order Denying Motion, 78 - Motion to Reconsider, and 85 - Order Denying Motion to Reconsider).

of allowed general unsecured claims.  Commercial is a Class 4 claimant.  Class 5 consists of the

stock and equity interests in the Debtor held by the Debtor's existing shareholders.  Charles R.

Longo, President of the Debtor, is the Debtor's sole equity security holder, and the only person in

Class 5.  Classes 4 and 5 are the only impaired classes under the proposed plan.

Commercial timely filed a proof of claim for an unsecured, non-priority claim in the

amount of $498,853.18[2]  based on a judgment and order entered in the Circuit Court of

Chesterfield County, Commonwealth of Virginia.   Charles A. Stanziale, Chapter 7 Trustee of the

bankruptcy estate of Student Finance Corporation, filed a proof of claim for an unsecured, non-

priority claim in the amount of 1,300,000.00.[3]  The proof of claim filed by the Chapter 7 Trustee

of the bankruptcy estate of Student Finance Corporation was filed on March 21, 2005, after the

claims bar date of August 3, 2004.  No objection to the claim of Student Finance Corporation has

been filed.    Student Finance Corporation and Commercial are both Class 4 claimants.  The total

amount of unsecured claims, including those scheduled by the Debtor and those represented by

proofs of claim for unscheduled claims or claims in an amount different than scheduled is

$1,970,339.90.[4]

---

[2]Debtor scheduled Commercial's claim in the amount of $497,000.00.

[3]Debtor scheduled Student Finance Corporation as an unsecured creditor with an unknown claim amount.

[4]Debtor's disclosure statement reports that the estimated amount of general unsecured claims is $2,742,180, and that some of these general unsecured claims are disputed.  Disclosure Statement, ¶ II.D.(4).

DISCUSSION

"It has become standard Chapter 11 practice that 'when an objection [to the disclosure statement] raises substantive plan issues that are normally addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face.'" *In re Felicity Associates, Inc.,* 197 B.R. 12, 14 (Bankr.D.R.I. 1996) (quoting *In re Main Road Properties,* 144 B.R. 217, 219 (Bankr.D.R.I. 1992) (citing *In re Bjolmes Realty Trust,* 134 B.R. 1000, 1002 (Bankr.D.Mass. 1991)); *In re Criimi Mae, Inc.,* 251 B.R. 796, 799 (Bankr.D.Md.2000) (noting that a disclosure statement can be disapproved on grounds that the plan is unconfirmable); *In re Beyond.com Corp.,* 289 B.R. 138, 140 (Bankr.N.D.Ca. 2003) (concluding that because underlying plan was patently unconfirmable, the disclosure statement could not be approved).   Commercial raises three arguments that the Debtor's plan cannot be confirmed:  1) Debtor will not have an impaired accepting class as required for confirmation under 11 U.S.C. § 1129(a)(10); 2) Debtor's proposed plan violates the absolute priority rule implicated by the fair and equitable requirement under 11 U.S.C.

4

§1129(b)(1)[5]; and 3) the proposed plan was not proposed in good faith as required by 11 U.S.C. § 1129(a)(3).  The Court will address each argument in turn.

In order to confirm a plan which includes an impaired class of claims, whether under 11 U.S.C. § 1129(a), or the cramdown provisions of 11 U.S.C. § 1129(b), there must be at least one impaired accepting class.  11 U.S.C. § 1129(a)(10).   Section 1129(a)(10) provides;

> If a class of claims impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider.

11 U.S.C. § 1129(a)(10).

"The purpose of § 1129(a)(10) is to 'prevent a debtor from using an insider- dominated class to satisfy the requirement that at least one impaired class of creditors vote in favor of the plan.'" *In re Holly Knoll Partnership,* 167 B.R.  381, 384 (Bankr.E.D.Pa. 1994) (quoting *In re Applegate Property, Ltd.,* 133 B.R.  827, 833 (Bankr.W.D.Texas 1991)).  Debtor's proposed plan of reorganization includes two classes of impaired claims.  Class 5 consists of the existing stock and equity interest in the Debtor held by existing shareholders.   The definition of "insider" for corporate debtors includes the directors, officers, persons in control of the debtor, and relatives of directors, officers or persons in control of the debtor.  11 U.S.C. § 101(31)(B)(i) - (iii).  The

---

[5]Section 1129(b)(2)(B)(ii) states that a plan is fair and equitable, provided "that the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property."  11 U.S.C. § 1129(b)(2)(B)(ii).  Commercial asserts that the Debtor's proposed plan of reorganization violates the absolute priority rule because it provides existing equity interest holders with an exclusive right to acquire 60% of the shares to be issued in the reorganized Debtor.  *See* Section 4.8 of Debtor's proposed plan of reorganization.  Debtor's proposed plan of reorganization provides that Class 4 claimants, including Commercial, may acquire up to 40% of the shares to be issued in the reorganized Debtor, but that such stock will be Class B, non-voting stock with no attendant rights to view the books, records or other proprietary information of the reorganized Debtor.  *Id.*

5

Debtor's President holds 100% of the equity security interests in the Debtor as disclosed in

disclosed in the Debtor's statements and schedules; therefore, an insider constitutes the only

interest holder in Class 5.  Because Class 5 consists solely of insider interests, the vote of Class 5

claimant must be disregarded, and Class 5 cannot serve as the impaired, accepting class of claims

or interests under 11 U.S.C. § 1129(a)(10).

Commercial states that it will vote to reject the Debtor's plan, and that it controls Class 4

because it holds more than 80% of the amount of general unsecured claims in Class 4.  *See* 11

U.S.C. § 1126(c) (acceptance of a plan determined by acceptance of at least two-thirds in the

amount of claims and more than one-half the claimants in each class).   This assertion fails to

account for the claim of Student Finance Corporation, which filed a proof of claim for

$1,300,000.00.  The proof of claim of Student Finance Corporation was filed after the claims bar

date.  However, no objection to the claim of Student Finance Corporation has been filed.

Pursuant to 11 U.S.C. § 502(a), "[a] claim or interest, proof of which is filed under section 501 of

this title is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Until

there is a filed objection to the claim of Student Finance Corporation, and a determination has

been made with regard to such claim, the proof of claim serves as prima facie evidence of the

validity and amount of the claim.  11 U.S.C. § 502(a); Rule 3001(f), Fed.R.Bankr.P. (evidentiary

effect of proof of claim executed and filed in accordance with the rules).  If the claim of Student

Finance Corporation is allowed, Student Finance Corporation will control Class 4.  Thus, the fact

that Commercial will vote to reject Debtor's proposed plan is not determinative of whether the

Debtor will fail to have an accepting, impaired class.  *Cf. In re Criimi Mae, Inc.,* 251 B.R 796,

6

805 (Bankr.D.Md. 2000) (finding that fact issues precluded determination at disclosure stage in proceeding that plan was patently unconfirmable.).

Similarly, because the Court cannot now conclusively determine that there will be an impaired, rejecting class of claims (i.e., Commercial will control the voting in Class 4, and Class 4 will reject the Debtor's plan), it is premature to reach the question of whether the Debtor's proposed plan of reorganization violates the absolute priority rule. Pursuant to 11 U.S.C. § 1129(b), if all other elements of 11 U.S.C. § 1129(a) are met, except for the requirement under 11 U.S.C. § 1129(a)(8) that all classes either accept the plan or are not impaired under the plan, a Debtor can nevertheless confirm a plan over the objections of an impaired rejecting class of claims, provided "the plan does not discriminate unfairly, and is fair and equitable." 11 U.S.C. § 1129(b)(1). This provision is commonly referred to as the "cramdown" provision, because it allows a Debtor to cram its plan down the throats of objecting impaired classes of creditors. *See In re Bonner Mall Partnership,* 2 F.3d 899, 906 (9th Cir. 1993) (noting that confirmation under 11 U.S.C. § 1129(b) "is commonly known in bankruptcy parlance as a 'cramdown' because the plan is crammed down the throats of the objecting class(es) of creditors."). However, unless and until there is a rejecting impaired class, the cramdown provisions of 11 U.S.C. § 1129(b) are not implicated. *See In re River Capital Corp.,* 155 B.R. 382, 386 n.3 (Bankr.E.D.Va. 1991) (noting that the absolute priority rule contained in 1129(b)(2)(B)(ii) applies only when the class as a whole rejects the plan).

In addition, "[t]o seek cramdown, the proponent must specifically request it." 7 Collier on Bankruptcy ¶ 1129.04[2] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2005). Debtor's disclosure statement and plan invoke 11 U.S.C. § 1129(b) "in order to confirm a plan

and to the extent necessary." Disclosure Statement, ¶ III.J.11.3; Plan, Article 11, Section 11.3.
In this case, whether Class 4 accepts the plan is determinative of confirmation, and until voting
occurs, it is not clear whether the Debtor will be in a cramdown situation. Arguably, the
cramdown provisions of 1129(b) will not be reached at all.

Based on the Debtor's designated classes of claims, the status of the claim of Student
Financial Corporation, and the position of Commercial, the following scenarios are possible. If
the claim of Student Financial Corporation is allowed, and Student Financial Corporation votes
to accept the plan, the claim of Student Financial Corporation is large enough to control the class.
Class 4 will have accepted the plan, 11 U.S.C. § 1129(a)(8) will have been satisfied, and there
will be no impaired, rejecting class of claims or interests that would cause the Debtor to have to
resort to 11 U.S.C. § 1129(b) in an effort to cram down its plan. If the claim of Student
Financial Corporation is disallowed, or if Student Financial Corporation fails to cast a ballot,
Commercial's vote to reject the Debtor's plan will result in a non-accepting impaired class of
claims, arguably implicating cramdown under 11 U.S.C. § 1129(b). However, in this situation,
the Debtor will fail to have an impaired, accepting class of claims or interests as required under
11 U.S.C. § 1129(a)(10) (since Class 4 will have rejected the plan, and the only other impaired
class, Class 5, is not entitled to vote). And an impaired accepting class, as required under 11
U.S.C. § 1129(a)(10), is a prerequisite to cramdown. 11 U.S.C. § 1129(b)(1) (" . . . if *all* of the
applicable requirements of subsection (a) of this section other than paragraph (8) are met . . . ")
(emphasis added); *Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle St.
Partnership,* 526 U.S. 434, 441, 119 S.Ct. 1411, 1416, 143 L.Ed.2d 607 (1999) ("*LaSalle*")
("Critical among them [the conditions to cramdown] are the conditions that the plan be accepted

8

by at least one class of impaired creditors . . .");  *In re Bryson Properties, XVIII,* 961 F.2d 496,

501 (4th Cir. 1992) (noting that "[b]efore a plan can be crammed down, at least one noninsider

impaired class of claims must vote to accept it.");  *In re Bjolmes Realty Trust,* 134 B.R. 1000,

1004 (Bankr.D.Mass. 1991) (noting that the necessary condition to cramdown is the acceptance

by an impaired class of claims or interests).

In any event, unless and until there is cramdown, the absolute priority rule need not be

considered.  *See In re Annicott Excellence, LLC,* 258 B.R. 278, 283 n.6 (Bankr.M.D.Fla. 2001)

(finding that creditor's objection in connection with a motion for relief from stay that the plan

was patently unconfirmable because it failed to satisfy the absolute priority rule as analyzed in

*LaSalle*  was premature, since "[t]he new value exception, 11 U.S.C. § 1129(b)(2)(B)(ii) does not

come into play until a debtor attempts cramdown of a rejecting class of impaired, unsecured

creditors.  Until such time as an impaired, unsecured class actually rejects the Plan, triggering

cramdown, the rule of *203 N. LaSalle* need not be considered.").

Nevertheless, because the Debtor's plan and disclosure statement invoke 11 U.S.C. §

1129(b) to the extent necessary to confirm a plan,  the Court will consider the implications of 11

U.S.C. § 1129(b)(2)(B) on the Debtor's proposed plan.    Under 11 U.S.C. § 1129(b)(2)(B), a

proposed plan of reorganization will not discriminate unfairly, and will be fair and equitable if,

> With respect to a class of unsecured claims –
>
>> (i) the plan provides that each holder of a claim of such class receive or
>> retain on account of such claim property of a value, as of the
>> effective date of the plan, equal to the allowed amount of such
>> claim; or

> > (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest in any property.

11 U.S.C. § 1129(b)(2)(B).

These provisions are known as the absolute priority rule. *See LaSalle,* 526 U.S. at 442, 199 S.Ct. at 1416 ("The latter condition [11 U.S.C. § 1129(B)(2)(B)(ii)] is the core of what is known as the 'absolute priority rule.'"); *In re Homestead Partners, Ltd.,* 197 B.R. 706, 710-711 (Bankr.N.D.Ga. 1996) (discussing origins of the absolute priority rule codified in 1 U.S.C. § 1129(b)(2)(B)). "In essence, the absolute priority rule provides that a junior class of creditors or interest holders may not receive or retain any property on account of their claims or interests unless the claims or interests of an objecting senior class are satisfied in full." *In re Davis,* 262 B.R. 791, 794 (Bankr.D.Ariz. 2001). In interpreting these provisions, the Supreme Court in *LaSalle* concluded that a plan by which existing equity holders would make additional capital contributions in exchange for the entire ownership in the reorganized debtor could not be confirmed over the objections of a senior impaired class of creditors and violated 11 U.S.C. § 1129(b)(2)(B)(ii). 526 U.S. at 458. Central to the reasoning of the Supreme Court was the need to expose the opportunity to acquire an interest in the reorganized debtor to the marketplace. *Id.* at 456 ("Hence it is that the exclusiveness of the opportunity, with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals, renders the partners' right a property interest extended "on account of" the old equity position and therefore subject to an unpaid senior creditor class's objection.").

Commercial asserts that the Debtor's proposed plan of reorganization violates the absolute priority rule because it provides existing equity interest holders with an exclusive right

to acquire 60% of the shares to be issued in the reorganized Debtor.  *See* Section 4.8 of Debtor's proposed plan of reorganization.  Debtor's proposed plan of reorganization provides that Class 4 claimants, including Commercial, may acquire up to 40% of the shares to be issued in the reorganized Debtor, but that such stock will be Class B, non-voting stock with no attendant rights to view the books, records or other proprietary information of the reorganized Debtor.  *Id.*

Clearly, this provision implicates 11 U.S.C. § 1129(b)(2)(B)(ii) and the reasoning in *LaSalle* because existing equity will have the opportunity to acquire control of the reorganized Debtor on account of their status as equity security holders.  That other Class 4 claimants will be provided an opportunity to acquire shares in the reorganized Debtor does not satisfy the requirements of 1129(b)(2)(B) because Section 4.8 restricts this opportunity.   Under Debtor's proposed plan, Class 4 claimants can only acquire up to 40% of the shares in the reorganized Debtor, and those shares will be Class B, non-voting stock.   Thus Debtor's proposed plan gives existing equity the exclusive right to acquire a majority position in the reorganized Debtor.  Such a provision runs contrary to the requirements for fair and equitable treatment under 11 U.S.C. § 1129(b).  *Cf. Homestead Partners,* 197 B.R. at 716 (a pre-*LaSalle* case, but concluding that "the presence of an exclusive opportunity [to existing equity holders] to buy stock in the reorganized debtor reveals itself as a de facto violation of absolute priority and an insurmountable barrier to confirmation.").

Debtor argues that because exclusivity has expired and others now have had the opportunity to file a competing plan, the absolute priority rule has been satisfied under the Supreme Court's interpretation of 1129(b)(2)(B) contained in *LaSalle*.  This Court disagrees.

11

In *LaSalle,* the Supreme Court stated that the debtor's plan was doomed "by its provision for vesting equity in the reorganized business in the Debtor's partners without extending an opportunity to anyone else either to compete for that equity **or** to propose a competing reorganization plan." (emphasis added) 526 U.S. at 454.  Thus at least part of the Supreme Court's conclusion was based on the fact that there was no opportunity for competing plans. *See Davis,* 262 B.R. at 799 (noting that while the Supreme Court expressly did not define what is necessary to meet its market test,  *LaSalle* "did broadly suggest that *either* the right to bid for equity under a plan *or* the opportunity to propose a competing plan would suffice.") (emphasis in original).   However, the emphasis of the Supreme Court's decision was the need to expose the opportunity to acquire interest in the reorganized debtor to the market.  *Id.* at 457. *See also, In re MJ Metal Products, Inc.,* 292 B.R. 702,705 (Bankr.D.Wyo. 2003) (summarizing *LaSalle* as follows: "if a new value contribution exists as an exception to the [absolute priority] rule, exposure to the market is essential to obtain that new value.").  That exclusivity has expired and other creditors have been afforded an opportunity to file a competing plan may be some evidence that the market has been tested.  However, the fact that no creditor has filed a competing plan cannot, in and of itself,  serve as sufficient evidence that the market has been tested as mandated by *LaSalle.*  Filing a plan of reorganization and soliciting votes is costly and time consuming. Creditors should not be coerced into filing a competing plan in the face of a debtor's plan that provides existing equity security holders an exclusive opportunity to retain control of the company.    In sum, although the Supreme Court's reasoning in *LaSalle* is based partly on the fact that exclusivity had not yet expired and there was no opportunity for creditors to propose competing plans, the Supreme Court expressly declined to so hold, stating that

> Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here.   It is enough to say, assuming a new value corollary, that plans providing junior interest holders with exclusive opportunities free from competition and without the benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).

> *LaSalle,* 526 U.S. at 458.

Assuming the Debtor otherwise reaches the cramdown provisions under 11 U.S.C. § 1129(b), Debtor's plan cannot satisfy the requirements of the absolute priority rule because it gives existing equity security holders exclusive opportunities to retain control of the Debtor on account of their status as equity security holders.

Commercial also alleges that the disclosure statement cannot be approved because the plan was not proposed in good faith as required by 11 U.S.C. § 1129(a)(3).   Whether a plan was proposed in good faith is a question of fact[6] to be addressed at confirmation, and does not serve as grounds to deny approval of a disclosure statement on the basis that the plan is patently unconfirmable.   "[T]he disclosure statement should be disapproved at the threshold only where the plan it describes displays fatal facial deficiencies or the stark absence of good faith." *In re Eastern Maine Elec. Co-op., Inc.,* 125 B.R. 329, 333 (Bankr.D.Me. 1991) (citations omitted). The final hearing on the Debtor's disclosure statement was a non-evidentiary hearing, and, based on the record, the Court cannot conclude as a matter of law that the Debtor's plan was not proposed in good faith.

---

[6]*See In re Simons,* 113 B.R. 942, 948 (Bankr.W.D.Tex. 1990) ("Good faith is primarily a question of fact.  The Court must look to the totality of the circumstances to determine good faith, not just one of the circumstances.") (citations omitted).

Having determined that the uncertainties concerning the outcome of Class 4 voting on the Debtor's proposed plan of reorganization preclude denial of the disclosure statement based on allegations that the proposed plan of reorganization is patently unconfirmable, the Court will consider the adequacy of the disclosure statement.  *Cf. Maine Elec. Co-op.,* 125 B.R. at 333 (noting that the process of reviewing a disclosure statement is a two step process: first to determine whether "the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible'" warranting disapproval of the disclosure statement; and second, assuming the plan is not patently unconfirmable, to consider the adequacy of the disclosures "in light of the facts unique to the case.").  Pursuant to 11 U.S.C. § 1125(a), a disclosure statement must contain "adequate information" defined as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the conditions of the debtor's books and records, that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

> 11 U.S.C. § 1125(a)(1).

In other words, 11 U.S.C. § 1125(a) requires that  "[t]he disclosure statement must contain information that is material, important and necessary for creditors and shareholders to properly evaluate a proposed plan and thus enable the creditors and shareholders to make a reasonably informed decision on the plan."  *In re William F. Gable Co.,* 10 B.R. 248, 249 (Bankr.W.D.Va. 1981).  Whether a disclosure statement provides sufficient information must be determined on a case by case basis.  *In re Scioto Valley Mortg. Co.,* 88 B.R. 168, 170 (Bankr.S.D.Ohio 1988). The *Scioto* court enumerated a non-exhaustive list of the types of information that should be disclosed, including the following: 1) the circumstances precipitating the bankruptcy; 2) a

complete description of the Debtor's assets and the value of such assets; 3) financial information, valuations or *pro forma* projections relevant to a creditor's determination of whether to accept the plan; 4) information regarding future management of the reorganized Debtor, including the amount of any compensation to insiders, directors and officers; 5) an estimate of the anticipated administrative expenses of the estate, including attorneys' fees. *Id.* at 170-171.

Upon review of the Debtor's disclosure statement. the Court agrees with Commercial that the disclosure statement is not adequate, and finds the following inadequacies:

1.  The disclosure statement fails to adequately describe the circumstances that gave rise to the bankruptcy filing and the Debtor's reasons for filing for relief under Chapter 11 of the bankruptcy code.

2.  The disclosure statement fails to identify the claims it plans to object to.

3.  The disclosure statement fails to describe the omnibus avoidance action in the Student Financial Corporation Delaware bankruptcy case with any specificity.  Nor does it describe the effect of the Student Financial Corporation bankruptcy proceeding on the Debtor. The disclosure statement should include a complete description of the adversary proceeding pending in connection with the Student Financial Corporation bankruptcy proceeding, whether the Debtor anticipates a likelihood of settlement, and what effect the Debtor anticipates that the Student Financial Corporation bankruptcy proceeding may have on the Debtor.

4.  The disclosure statement fails to describe with specificity any alleged preference or avoidance actions the reorganized Debtor plans to pursue as a means to fund the Debtor's plan.   The disclosure statement needs to identify what preference or avoidance actions

15

it anticipates filing, and include an evaluation of the anticipated litigation costs, likelihood of success, and possible recovery amounts.

5.  The disclosure statement fails to describe with sufficient specificity the Debtor's operations and performance during the bankruptcy and its anticipated future financial projections. At a minimum, Debtor's disclosure statement should include a three-year projection for future operations of the Debtor's business.

6.  The disclosure statement fails to identify all anticipated lease rejections, nor does it include any estimate for the claims that may result from the Debtor's rejection of such leases or executory contracts.  The disclosure statement states that the Debtor will assume certain leases on non-residential real property, but fails to identify what those leases are, how many there are, and how such leases will aid in the Debtor's reorganization efforts.

7.  The disclosure statement fails to provide composite operating reports from the date of the filing of the petition through June 30, 2005.

8.  The disclosure statement fails to identify what relationship, if any, American Credit has with the Debtor.

9.  The disclosure statement fails to identify the compensation of future management.

10.  The disclosure statement fails to provide an adequate claims analysis, including tax claims and any anticipated post petition claims. Nor does the disclosure statement provide a breakdown of the anticipated administrative expenses such as attorneys' fees or other professional fees such as accountants' fees.  While the disclosure statement states that some

16

claims are disputed, it fails to identify which claims it disputes and the amount of such disputed claims. Nor does the disclosure statement identify the claims it anticipates it will object to.

       11. The disclosure statement fails to explain why it contains information different than the information contained in the Debtor's statements and schedules. Specifically, there is a marked discrepancy between the amount of unsecured claims contained in the Debtor's schedules and the amount of unsecured claims referenced in the Disclosure Statement.

     Based on the foregoing, the Court concludes that the Debtor's disclosure statement cannot be approved because it fails to include the adequate information required under 11 U.S.C. § 1125(a). An appropriate order will be entered in accordance with this Memorandum.

**End of Memorandum.**

cc:    Alan M. Grochal and Matthew Brown, attorneys for Debtor
       Gary Leibowitz and Saul Ewing, attorneys for Commercial Driver Services
       Office of the United States Trustee